The case, from the bill, answer and testimony, appears to be thus. The complainant and the defendant Brown, on the 26th of February, 1804, entered into an article of agreement, under their hands and seals, by which they mututally covenanted to build a furnace on Yellow Creek, in the county of Montgomery and State of Tennessee, on the lands of Brown, and to commence the building thereof immediately. The said Brown to furnish $1,500 worth of such articles and good property towards carrying on said building, to be passed to his credit. And the said M'Daniel to furnish, on or before the first of the succeeding May, the sum of $1,500 in cash, to be passed also to his credit on the partnership books. That said, furnace should be built at the joint and equal expense of the said M'Daniel and Brown, and that they should be equally entitled to the profits arising from said furnace for the term of seven years. And that their partnership should end the last day of May, 1811, and that at the end of the aforesaid term, said furnace, together with all her tackling,c., should belong to the said Brown, his heirs, c. In consideration of which, said Brown covenanted to pay said M'Daniel, his heirs, c, one-half of the original costs of building said furnace, after deducting a sufficient and reasonable allowance for the wear and tear and damages which she may have sustained during the term aforesaid. The said Brown also covenants that iron or for the use of said furnace during the term aforesaid might be gotten off his land, and cord wood also for which latter article the said M'Daniel was to pay him at the rate of $100 *Page 259 
per annum. It was also covenanted that the said M'Daniel, during the continuance of the aforesaid term, should furnish such quantities of pig metal, for the use of the forges of Brown as he, Brown might require, not exceeding 200 tons in any one year, for which Brown was to give M'Daniel at the rate of one ton net of bar iron for six tons gross of pig metal, and also receive from the furnace the grates and scraps, rating three tons of grates and scraps equal to two tons of pigs. There are some other covenants in the foregoing articles which are not necessary upon this occasion to be noticed.
It seems that after Brown and M'Daniel had entered into the foregoing articles, in pursuance thereof, they commenced the building of a furnace, and carried it on almost to completion, when, through some cause explained, they became exceedingly hostile to each other. At this time M'Daniel's advances towards the building of said furnace amounted to the sum of $2.957.41¾ and Brown's to the sum of $5.987.52½ when Montgomery Bell, on the 26th of April, 1805, entered into an article of agreement with Brown, by which he purchased the whole of the interest of Brown, in said furnace and partnership concern, together with a considerable quantity of other property which belonged exclusively to Brown; and by said article bound himself, his heirs,c., to do and perform all and singular the articles in the covenant before mentioned between M'Daniel and Brown, which were on the part of Brown to be performed, in the same manner which the said Brown ought, in law, equity, and good conscience, to perform them. After this, Brown withdrew his hands and funds from the partnership business, and Bell did not assist M'Daniel in carrying it on as a partner ought to have done. M'Daniel was not able to carry it on himself, but endeavored to do so as far as in his power lay; and in doing this, was *Page 260 
compelled to make considerable sacrifices. Bell declared that he would not be in partnership with M'Daniel. That he would have the exclusive interest in the whole business himself. After a while a negotiation took place between Bell and M'Daniel, by which Bell was to become exclusively entitled to the furnace. And the parties not agreeing as to terms, on the 13th day of May, 1805, entered into bond containing, among other things, the following clauses, to-wit: "We Clement M'Daniel and Montgomery Bell, having mutually agreed that George West, Samuel Thornton, Doctor Brunson. and William Clement, shall and do value, ascertain, and award the amount of the interest right and title of the said Clement M'Daniel, in and to the one-half of the furnace for the term of seven years, on Yellow Greek, lately the property of said M'Daniel and Dr. Brown, do hereby bind ourselves; heirs, c. in the penal sum of $50,000, to abide by the decision and award of the aforesaid persons or a majority of them, c, and that the said Montgomery Bell shall pay the amount of the award to the said Clement M'Daniel, which he shall receive as full payment and compensation for this Tight and interest in the furnace for the term aforesaid, to be paid, c. And further, we bind ourselves, our heirs,c, to lay before the aforesaid referees, articles agreed upon between ourselves for their government." After this bond was executed, the parties agreed by bond that the balance of the arbitrators exclusive of Shelby and Brunson, should act upon the matters before mentioned. The arbitrators accordingly met on the 18th of May, 1805, When the parties submitted to them the following preliminary articles for their government, to-wit: "Montgomery Bell having agreed to purchase Of Clement M'Daniel's one-half for seven-years of the furnace on Yellow Creek, and having appointed arbitrators to ascertain the value thereof, it is agreed that said arbitrators shall take. *Page 261 
into consideration, and act upon and in conformity to the following articles. Montgomery Bell agrees to assume the payment of said M'Daniel's furnace debts, as they stand in the books, and to make good every contract, made by or under the direction of Clement M'Daniel in behalf of the firm of Brown M'Daniel." Other articles were also submitted which it is not important upon this occasion to notice. The arbitrators in the presence of the parties then went into an ascertainment of the matters submitted to them and used the books in which account of the expenses of Brown and M'Daniel had been kept as evidence. After reciting their authority they say, "That Montgomery Bell shall pay all M'Daniel's furnace debts as they stand stated in said furnace books; and make good every contract made by or under the direction of the said M'Daniel in behalf or the firm of Brown 
M'Daniel; which debts the said Bell shall hold himself responsible for. and shall pay to the individual creditors of the said Brown M'Daniel;" and shall also hold himself and be accountable to Morgan Brown or any other person or persons claiming under him, for any charge or charges, claim or claims that may be made or produced against the said M'Daniel for any privilege of any kind or nature whatsoever granted by the said Brown for the benefit of said furnace or relative to the working or carrying on the business thereof. And said Bell to advertise, c. And, moreover, that the said Bell do pay the said Clement M'Daniel for and in consideration of his, said M'Daniel's interest, right, title, claim and property, in and to the furnace aforesaid, for the aforesaid term of seven years, and for and including all accounts of advances of every nature and kind made by said M'Daniel for the purpose of building said furnace, the sum of $4,754.05, which said sum of money may be discharged in castings,c. Should any error or mistake be discovered to have *Page 262 
taken place in said M'Daniel's account in the books of the furnace aforesaid, and which has been considered as a part of his interest in said furnace amounting to $2,766.07½, they are to be admitted and rectified. It is to be understood that Montgomery Bell is to pay Morgan Brown any claim or claims be may have against the said M'Daniel on account of advances made by him, Brown, or on any other account whatsoever relative to the furnace business. This award being made, M'Daniel delivered up possession of the furnace to Bell who carried on the works and put the furnace in blast about three months thereafter. The complainant's bill is filed after the expiration of the term of seven years, praying that an account may be taken of the sum advanced for building the furnace, and that the defendants Bell and Brown, may be compelled to pay him one-half of that sum after deducting for wear and tear and damages: and insists that at the time of arbitration he had no knowledge that Bell by his contract with Brown, was liable to pay for those advances, and that his right to them was not submitted to the arbitrators, and if the words of the award seem to include them, these words were inserted by mistake. Bell's answer asserts expressly that M'Daniel was by him informed of his contract with Brown, and that he was thereby liable for the payment of these advances. That they were included in the submission and award, and have been fully paid and satisfied. The only material questions that can arise in this case are: first, was the sum advanced for building the furnace included in the terms of the submission? or, in other words, had the arbitrators a right to make any award respecting it? Secondly, is it included in the award? Thirdly, if included in the award, has it been paid to the complainant? The Court can not comprehend why it was stated by the complainant in his bill, or why his counsel have with such perservering earnestness insisted that Bell did not communicate to the *Page 263 
complainant that by his contract with Brown he was liable to pay for these advances. The complainant was not purchasing Bell's interest. If this had been the case, a concealment of that interest so as to induce the complainant to give a greater sum for it, might have been urged as a ground of setting aside the contract wholly or partially. But in this case the complainant was the vendor, and certainly knew what his own interest was. And whether he knew the quantity of interest Bell had, or whether he had any it could not and ought not to have any effect on the terms of this contract. Another reason why this must be wholly immaterial, is, that the complainant is not seeking to have the contract set aside for fraud in the party; but only insists that the sum which he now claims is not included in it unless by mistake.
The rules laid down for the construction of written instruments are familiar to the bar, and need not now be repeated. The result of all the rules is in inquiry, what ideas the parties intended to convey by the words they have used. It is stipulated in the terms of the submission that the referees shall value the amount of the interest, right and title of Clement M'Daniel in and to the one-half of the furnace for the team of seven years; that Bell shall pay the amount and M'Daniel receive it, as a full compensation for his right and interest in the furnace, and for the term aforesaid. What was his right in the furnace and term? It arose wholly from a partnership contract, and must be governed by the terms of that contract, which were that M'Daniel should advance one-half the expense of building, half the costs of carrying it on, that he should have half the net profits and at the end of the term have half the cattle, working oxen,c., and the half of the expense which he had advanced for building the furnace, after certain deductions. The whole of this interest appears to be included in the expression used in the submission. If any exception had been intended, it would *Page 264 
probably have been made. But it is not made. The Court conceive it would require a strong effort of the imagination to separate the different parts of this entire contract so that one part of it should be exclusively intended by the terms used, and the other be a mere personal contract for the repayment of money advanced. It is, however, not material to determine what the parties did certainly mean when they submitted to the award, for on the second point it is clear that the referees so understood it, and awarded accordingly. They say that Bell shall pay to M'Daniel $4,754.05 for and in consideration of his right, c., in and to the furnace aforesaid for the aforesaid term of seven years, and for and including all advances of every kind for the purpose of building the furnace; and lest their meaning should be mistaken, they afterwards add in substance, that M'Daniel's accounts on the books of the furnace, amounting to $2,766.07½ have been considered as a part of his interest in said furnace. After this declaration it seems to the Court impossible so to torture the meaning of words as to say that the sum claimed by the bill is not included: in the award. It is admitted by the Court that if arbitrators exceed their authority the award may be set aside wholly, or in sonic cases protanto, if the party complaining take the proper measures for that purpose. But this can not be done after the award has been acquiesced in and carried into effect. And this leads to the third question: Has the award been performed? There can be no doubt upon this part of the case. The possession was delivered up by M'Daniel. Bell paid a part of the sums awarded voluntarily. On a failure alleged. M'Daniel commenced an action on the award, and assigned as a breach the non-payment of the very sum in the award which includes the advances for building the furnace, and recovered judgment. Shall he then, after enforcing payment of this very *Page 265 
sum, be permitted to come into this court and recover it again? Every principle of law and equity says no.
Let the bill be dismissed.